George D. Ogden, J.
During the evening of December 11,1959, defendant and his codefendant were apprehended as a result of the fatal shooting of a police officer who had been summoned to the scene of a burglary in the City of Rochester. Immediately after his apprehension, about 12:01 a.m., December 12,1959, defendant was questioned by the police, and although he denied any implication in the shooting, stated that he wanted to con- *454 suit a lawyer “ before I do any talking ”. The questioning continued, although apparently defendant made no incriminatory statements. Defendant was arraigned on December 12,1959 and charged with murder. On December 15, 1959 defendant made a statement, without being represented by counsel, to two police detectives, which statement was not reduced to writing; at the trial of defendant these detectives testified to their recollection of this statement. In June, 1960 defendant and his codefendant, both represented by counsel, were tried before a jury, and on June 29,1960 convicted of murder in the first degree; defendant did not appeal from said judgment of conviction.
On April 5,1962, the Court of Appeals decided People v. Meyer (11 N Y 2d 162, 165) and stated: “We thus conclude that any statement made by an accused after arraignment not in the presence of counsel as in Spano [v. New York, 360 U. S. 315], [People v.] Di Biasi [7 NY 2d 544] and [People v.] Waterman [9 N Y 2d 561] is inadmissible ”. This constituted a change in the interpretation of the law. Defendant alleges that the holding of People v. Meyer (supra) should be applied retroactively, and that the reception in evidence of his incriminating oral statement of December 15, 1959 — made after his arraignment — constituted error requiring a reversal of the judgment.
In People v. Kaiser (21 N Y 2d 86, 97) the Court of Appeals had this to say about retroactivity: “ In Stovall v. Denno (388 U. S. 297) the Supreme Court set out the governing considerations in determining whether a fundamental change in constitutional interpretation should be applied retroactively: ‘ The criteria guiding resolution of the question implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.’ ‘ [T]he retroactivity or nonretroactivity of a rule is not automatically determined by the provisions of the Constitution on which the dictate is based. Each constitutional rule of criminal procedure has its own distinct functions, its own background or precedent, and its own impact on the administration of justice, and the way in which these factors combine must inevitably vary with the dictate involved.’ ” And in People v. De Renzzio (19 N Y 2d 45, 49) the court stated about retroactivity: “ No such rule had been announced in 1938; and the understanding of the Bar on this point of law was quite the other way.
“ In basic conceptional theory the pronouncement of the common-law court is deemed retroactively to have been the rule of the past. A decision states the law as it ought rightly to have *455 been understood from the beginning. But this is one of the fictions by which the common law lived; and nowhere is it more manifestly a fiction than in the area of constitutional interpretation.
“ The fact is that there was a different judicial reading of the Constitution in 1938 and in 1960 on the admissibility of a postindictment statement. There seems no compelling policy reason why, because of a general theory of retroactivity of judicial pronouncement we must, or should, impose a subsequently developed theory of law upon a trial competently managed nearly 30 years ago.” And at page 53 (People v. Be Renzzio, supra): “ The rule barring the use of postindictment statements is in reality not fundamentally different in its effect upon the ‘ integrity of the fact-finding process ’ than that laid down in Escobedo [378 U. S. 478] and Miranda [384 U. S. 436]. Hence it should not be applied to cases in this State in which the statement was taken by the authorities long before the rule in People v. Di Biasi [7 N Y 2d 544] supra was announced ”. (See, also, Johnson v. New Jersey, 384 U. S. 719; People v. McQueen, 18 N Y 2d 337; and People v. Sayers, 22 N Y 2d 571.)
In my opinion, the holding in People v. Meyer (11 N Y 2d 162, supra) is not retroactive. It may be that a voluntariness hearing (People v. Huntley, 15 N Y 2d 72) may disclose additional facts (People v. Boone, 22 N Y 2d 476, 483) which would bear upon this question; the question of voluntariness in this case cannot be decided upon the record presented; if defendant desires to present other additional facts on the question of voluntariness, a hearing for this purpose will be held before this court, at the Hall of Justice, in the City of Rochester, Monroe County, New York, on the 24th day of January, 1969, at 10:00 o’clock in the forenoon of that day, or as soon thereafter as the parties hereto or their counsel can be heard.